# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTHANN LOZA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:17-cv-0598 - JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF RUTHANN LOZA AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

　　　　Ruthann Loza asserts she is entitled to a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and seeks judicial review of the decision to deny her application for benefits. Because the ALJ failed to apply the proper legal standards, as discussed below, the administrative decision is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

　　　　In 2013, Plaintiff filed her applications for benefits, alleging disability beginning July 15, 2013. (Doc. 10-6 at 2, 5) The Social Security Administration denied the applications at both the initial level and upon reconsideration. (*See generally* Doc. 10-4) After requesting a hearing, Plaintiff testified before an ALJ on October 27, 2015. (Doc. 10-3 at 22, 39) The ALJ found Plaintiff was not disabled as

1

defined by the Social Security Act, and issued an order denying benefits on December 21, 2015. (*Id.* at 22-32) Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied the request on February 24, 2017. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.      Relevant Medical Evidence**[1]

On July 24, 2013, Plaintiff underwent x-rays of her lumbar spine and right knee. (Doc. 10-10 at 46-47) Dr. Mark Williams found "[n]o lumbar spine fracture or other acute changes." (*Id.* at 46) He determined Plaintiff had "[t]ransitional changes… with moderate narrowing of the L5-S1 disc." (*Id.*) In addition, Dr. Williams found Plaintiff had "[m]ild diffuse spurring …consistent with spondylosis" and Grade I anterolisthesis at the L4-L5 levels. (*Id.*) Dr. Williams concluded Plaintiff did not have any "abnormal knee finding." (*Id.* at 47)

Dr. Emanuel Dozier performed a consultative physical examination on March 24, 2014. (Doc. 10-9 at 4) Dr. Dozier noted that his review of records included Plaintiff's "statement of illness" and "a copy of a previous psychiatric evaluation." (*Id.*) Plaintiff's physical complaints included "a 10-year history of rheumatoid arthritis with a high ANA;" hepatitis C, which was diagnosed in 2002; and hypothyroidism. (*Id.*) Plaintiff stated her joints affected by rheumatoid arthritis included her "hands, wrists, shoulders, neck, back, knees, ankles, and feet." (*Id.*) She described her pain as "8/10… in her joints," but did not take medication for relief. (*Id.*) Dr. Dozier observed Plaintiff walking in a hall, and noted she walked with a normal gait, without signs of pain. (*Id.* at 5) In addition, Plaintiff was "able to

---

[1] The Court's analysis below focuses upon Plaintiff's physical residual functional capacity. Thus, while the Court has reviewed the entirety of the record, this summary of the medical evidence focuses upon the objective evidence and clinical findings related to Plaintiff's physical impairments.

3

transfer on and off the examination table without assistance." (*Id.*) Plaintiff's straight leg raising tests were "negative in the seated and supine positions." (*Id.* at 6) Dr. Dozier found Plaintiff's grip strength and motor strength was "5/5," bilaterally, and her light touch and pinprick senses were intact. (*Id.* at 7) Dr. Dozier concluded Plaintiff's walking, standing, and sitting abilities were "unlimited in an eight hour-day." (*Id.*) Dr. Dozier also found Plaintiff did not have any postural, manipulative, or environmental limitations. (*Id.* at 8)

On April 15, 2014, Dr. Kuge completed a case analysis and noted Plaintiff had "multiple physical allegations" including rheumatoid arthritis, hepatitis C, and hypothyroidism. (Doc. 10-4 at 26) Dr. Kuge noted Plaintiff's consultative examination results "indicate[d] no abnormalities of her joints, liver, or thyroid." (*Id.*) In addition, Dr. Kuge noted Plaintiff's exam results "reveal[ed] normal gait, strength, coordination, sensation and [range of motions] of [the] spine and extremities." (*Id.*) Dr. Kuge concluded Plaintiff's physical impairments were "non-severe." (*Id.*)

Dr. Roy Brown reviewed the medical record as part of the reconsideration of Plaintiff's applications for benefits on July 24, 2014. (Doc. 10-4 at 42) Dr. Brown opined the evidence showed Plaintiff had "mental health issues" and her "physical exam [was] normal as … in the initial assessment." (*Id.*) Dr. Brown opined Plaintiff was "physically non severe." (*Id.*)

Dr. Carmen Fischer performed a consultative examination at the Pain Institute of Central California on May 8, 2015. (Doc. 10-12 at 73) Plaintiff "report[ed] that she had pain everywhere," including her "shoulders, knees and joints in her hands and also low back." (*Id.*) She described her pain as a "7/10," and as "stabbing, dull aching pins and needles." (*Id.*) Dr. Fischer determined Plaintiff had "decreased range of motion with respect to flexion and extension" in the lumbar spine." (*Id.*) Plaintiff's muscle strength was "5/5" in her leg muscles, and her range of motion was normal in both legs. (*Id.* at 73-74) Dr. Fischer opined Plaintiff's pinprick perception and light touch perception were "50% of normal." (*Id.* at 73) In addition, she found Plaintiff had positive straight leg raise tests and sciatic tenderness bilaterally. (*Id.* at 74) Dr. Fischer ordered an MRI of Plaintiff's lumbar spine and prescribed fentanyl patches for pain. (*Id.*)

Plaintiff had a follow-up with Dr. Fischer in August 2015. (Doc. 10-12 at 66) Dr. Fisher found Plaintiff had decreased range of motion in her lumbar spine and "50% of normal" pinprick and light

touch perceptions. (*Id.*) Plaintiff again had positive straight leg raise tests bilaterally and sciatic tenderness. (*Id.*) Dr. Fischer prescribed more fentanyl patches, and indicated she would see Plaintiff again after the MRI was performed. (*Id.* at 67)

Plaintiff had the MRI on her lumbar spine due to her complaints of "chronic pain and radiculopathy" on September 18, 2015. (Doc. 10-12 at 61) Dr. Manjul Shah determined Plaintiff had bulging discs and facet hypertrophy at the L2-3, L3-4, L4-5, and L5-S1 levels. (*Id.*) Dr. Shah opined Plaintiff had "[d]egenerative changes most marked at L4-5, at which level there [was] moderate canal and bilateral foraminal stenosis." (*Id.*) Dr. Shah found Plaintiff had "mild-to-moderate canal and bilateral foraminal stenosis at L5-S1," and "mild canal and mild-to-moderate bilateral foraminal stenosis at L2-3 and L3-4." (*Id.* at 62) According to Dr. Shah, the MRI was "otherwise negative," with no "herniation, canal, or foraminal stenosis" at the T12-L2 and L1-L2 levels. (*Id.*)

Dr. Fischer conducted a follow-up examination on October 7, 2015. (Doc. 10-12 at 64) Dr. Fischer observed that Plaintiff's gait was normal. (*Id.*) She again determined Plaintiff had a "decreased range of motion with respect to flexion and extension" in the lumbar spine. (*Id.*) Dr. Fischer also found Plaintiff's pinprick perception and light touch perception were "50% of normal." (*Id.*) Plaintiff had positive straight leg raise tests bilaterally, as well as "[s]ciatic notch tenderness" bilaterally. (*Id.*) Dr. Fischer noted Plaintiff would be scheduled for an epidural injection. (*Id.* at 65)

**B.    Administrative Hearing Testimony**

Plaintiff testified that she stopped working in 2013 because she "was really depressed" and "wasn't able to make it to work all the time." (Doc. 10-3 at 42) She explained that she had "really bad anxiety attacks, because [she] worked with a lot of people." (*Id.*) Plaintiff said since that time, her impairments became "more physical," including back pain, hepatitis C, arthritis, and fibromyalgia. (*Id.* at 42-43, 45)

Plaintiff stated that on an average day, the pain in her back was "about a seven to an eight" out of ten. (Doc. 10-3 at 43) She said the pain radiated down her legs, mostly into the right leg. (*Id.* at 43-44) Plaintiff reported she also had numbness and tingling in both feet. (*Id.* at 44) She stated that she received an injection for her back pain and a fentanyl patch, which reduced her pain to "[m]aybe a five" out of ten. (*Id.*)

She estimated that she could sit for about two hours at one time and explained she did not "feel comfortable sitting… all the time." (Doc. 10-3 at 52-53) Plaintiff believed she could stand for "[l]ess than 30 minutes" at one time before she had to sit, and stand a total of two hours in a day. (*Id.* at 53) She stated that she could lift and carry "[l]ess than ten pounds" comfortably, explaining she also had trouble with the joints in her hands hurting. (*Id.* at 54)

**C.  The ALJ's Findings**

Pursuant to the five-step process, the ALJ first determined Plaintiff engaged in substantial gainful activity from January 2014 to April 2014, but there was "a continuous 12-month period[] during which the claimant did not engage in substantial gainful activity." (Doc. 10-3 at 24-25) Therefore, the ALJ indicated that her remaining findings would "address the period[] the claimant did not engage in substantial gainful activity," beginning in mid-April 2014. (*Id.* at 25)

At step two, the ALJ found Plaintiff's severe impairments included: Hepatitis C, lumbar spondylosis, obesity, and affective disorder. (Doc. 10-3 at 25) The ALJ noted Plaintiff also reported that she had asthma, rheumatoid arthritis and fibromyalgia. (*Id.*) However, the ALJ found Plaintiff's "asthma [was] being managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance." (*Id.*) Thus, she opined Plaintiff's asthma was not severe. (*Id.*) In addition, the ALJ found Plaintiff's reported rheumatoid arthritis and fibromyalgia were not supported by "clinical or objective medical evidence," and as a result they were not "medically determinable impairments" under the Regulations. (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (Doc. 10-3 at 25-26) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to six hours of an eight-hour workday; sit up to eight hours of an eight-hour workday; could occasionally climb, balance, stoop, kneel, crouch, and crawl; no climbing ladders, ropes or scaffolds; could perform simple repetitive tasks with occasional interaction with the public, supervisors, and co-workers; [and] can maintain concentration, persistence and pace for two hours at a time with a 10 minute break after two hours of working.

(*Id.* at 26) With this residual functional capacity, the ALJ opined at step four that Plaintiff was "unable to perform any past relevant work." (*Id.* at 31) However, the ALJ determined there were "jobs that

exist in significant numbers in the national economy that the claimant can perform." (*Id.*)  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 32)

# DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred in determining her residual functional capacity because the ALJ's findings are "unsupported by substantial evidence because the ALJ rejected all of the opinion evidence from acceptable medical sources and used her own lay interpretation of the raw medical evidence when formulating the RFC." (Doc. 14 at 10, emphasis omitted)  On the other hand, Defendant argues that "the ALJ properly based her RFC finding on the record."  (Doc. 18 at 9)

**A.     The Residual Functional Capacity**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").  In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility.  *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  Further, the ALJ must consider "all of [a claimant's] medically determinable impairments"—whether severe or not—when assessing a RFC.  20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

The ALJ explained the weight given to the opinions of Drs. Dozier and Brown as follows:

> Consulting examiner, Dr. Dozier opined that she is able to walk, stand and sit with no limitations in an eight-hour day. He found the claimant did not have any limitations in her ability to lift/carry, or perform postural, manipulative, and environmental activities (Exhibit 1F).  State agency medical consultant Roy Brown, MD opined that the claimant's physical impairments were not severe (Exhibit 6A).  The assessments of consultative examiner Dr. Dozier and Dr. Brown are given little weight because the limitations the undersigned developed for the claimant's residual functional capacity are more consistent with the claimant's limitations as expressed in her testimony and the record as a whole.

(Doc. 10-3 at 30)  Plaintiff contends the ALJ erred in assessing the RFC in this matter. (Doc. 14 at 11) She argues the ALJ erred in limiting Plaintiff to light work with postural limitations "without the aid of any medical opinion whatsoever," particularly in light of the objective findings and MRI results, which were obtained after Drs. Dozier and Brown gave their opinions.  (*See id.* at 11-12)

|   | Defendant argues that Plaintiff's argument "is a misrepresentation of the law," because the |
|---|---|

1    Defendant argues that Plaintiff's argument "is a misrepresentation of the law," because the
2 "RFC is not a medical finding but an administrative finding left to the Commissioner." (Doc. 18 at 8-9,
3 citing 20 C.F.R. § 404.1527(e)(2) (emphasis omitted). Defendant observes that the Ninth Circuit
4 determined "it is the responsibility of the ALJ, not the claimant's physician, to determine residual
5 functional capacity." (*Id.* at 8, quoting *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001)) Thus,
6 Defendant asserts the ALJ did not "play[] doctor," as Plaintiff asserts, but rather the ALJ did "exactly
7 what the rules tell her to do – assess RFC from her analysis of the record as a whole." (*Id.*) According
8 to Defendant, "the ALJ came to the very reasonable conclusion that Plaintiff was not unlimited
9 physically, but limited to light work." (*Id.* at 9)

10    Notably, the consultative examination by Dr. Dozier on March 24, 2014 occurred prior to the
11 relevant time period—which began the following month (*see* Doc. 10-9 at 24-25)—and the results from
12 this examination were identified as support for the conclusions offered by Drs. Kuge and Brown that
13 Plaintiff's physical impairments were "non-severe." (Doc. 10-4 at 26, 42) None of the physicians who
14 offered opinions indicated that they reviewed the results of Plaintiff's lumbar spine x-rays from July
15 2013. In addition, they did not have the opportunity to review the objective findings from the
16 examinations by Dr. Fischer or the MRI results from September 2015. Dr. Fischer repeatedly found
17 Plaintiff had positive straight leg raise tests in 2015, though Plaintiff's tests were negative in 2014
18 when examined by Dr. Dozier. (*Compare* Doc. 10-9 at 5 *with* Doc. 10-12 at 64, 66, 74) Likewise,
19 though Dr. Dozier determined Plaintiff's light touch and pinprick senses were intact in 2014, Dr.
20 Fischer found Plaintiff was at "50% of normal" in 2015. (*Compare* Doc. 10-9 at 7 *with* Doc. 10-12 at
21 64, 66, 73) Further, Dr. Fischer found Plaintiff had a decreased range of motion in her lumbar spine
22 with flexion and extension. (Doc. 10-12 at 64, 73) Evidently, the ALJ reviewed these findings and
23 concluded Plaintiff could perform light work with postural limitations.

24    Because no physician reviewed the MRI results or the clinical findings of Dr. Fischer from the
25 examinations in 2015, the ALJ clearly rendered her own medical findings that Plaintiff could perform
26 light work with postural limitations. However, it is well-settled law that an ALJ may not render her
27 own medical opinion and is not empowered to independently assess clinical findings. *See, e.g., Tackett*
28 *v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians'

opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms"). "When an ALJ rejects all medical opinions in favor of his own, a finding that the RFC is supported by substantial evidence is less likely." *See Stairs v. Astrue*, 2011 WL 318330, at *12 (E.D. Cal. Feb.1, 2011). For example, this Court determined an ALJ erred where all medical opinions were rejected before the ALJ formulated the RFC. *See Perez v. Comm'r of Soc. Sec.*, 2018 WL 721399 (E.D. Cal. Feb. 6, 2018).

In *Perez*, a physician concluded after a consultative examination that the claimant "had no functional restrictions" and two non-examining physicians opined the claimant "had no severe physical impairments. *Id.*, 2018 WL 721399 at *6. The ALJ "gave no weight" to these opinions, finding the record indicated the claimant had some limitations. *Id.* "After rejecting all the doctor's opinions, the ALJ concluded that Plaintiff would be capable of a reduced range of light work with postural manipulative and environmental restrictions." *Id.* The Court found the ALJ erred, explaining:

> A claimant's residual functional capacity is not a medical opinion, but is an issue to be decided by the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.920(d)(2). However, the finding must be supported by substantial evidence in the record and the ALJ must explain his reasoning behind the RFC. 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.1520c, 416.920c.
>
> Here, the ALJ stated that the RFC was supported by the weight of the objective evidence and Plaintiff's less than credible testimony. But the Court is unable to determine how the ALJ arrived at the conclusion that Plaintiff was capable of light work. Absent adequate explanation of the record, without specific support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined his own limitations for Plaintiff. The Court finds that this was error. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person,... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

*Id.*, 2018 WL 721399 at *7-8. Without the support of a physician's opinion, the Court concluded the RFC lacked the support of substantial evidence. *Id.* at *8.

9

Here, the ALJ indicated she gave "little weight" to the opinions of the consultative examiner and non-examining physician, finding instead the limitations she assessed in the RFC were "more consistent with the claimant's limitations as expressed in her testimony and the record as a whole." (Doc. 10-3 at 30)  However, the Court is unable to determine why the ALJ believed a restriction to light work was appropriate, or why the ALJ found Plaintiff "could occasionally climb, balance, stoop, kneel, crouch, and crawl" but not "climb[] ladders, ropes or scaffolds." (*See id.* at 26)  There simply is no evidentiary support for these conclusions, which—contrary to the ALJ's assertion—conflict with Plaintiff's testimony that she could stand for a total of two hours in a day, sit for about two hours at one time, and lift and carry "[l]ess than ten pounds." (*See* Doc. 10-3 at 52-54)  Without medical opinions to support the ALJ's conclusions, the physical RFC lacks the support of substantial evidence. *See Perez,* 2018 WL 721399 at *7-8; *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) (holding "the ALJ's conclusions are not supported by substantial evidence" if an RFC is formulated without the findings of a physician).  Accordingly, the ALJ erred in evaluating the record and assessing Plaintiff's physical RFC.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The physical RFC articulated by the ALJ lacks the support of substantial evidence in the record, and the matter should be remanded for further consideration. *See Tackett*, 180 F.3d at 1102-03 (remanding the matter to the Social Security Administration for reconsideration after finding the ALJ erred by offering his own medical conclusion, which was not supported by any medical evidence); *Perez*, 958 F.2d at 446 (finding that where the ALJ offered any opinion "without any assessment of residual functional capacity by a physician, …it is necessary to remand for the taking of further functional evidence").

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ erred in her evaluation of Plaintiff's physical RFC and failed to apply the correct legal standards. Consequently, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate regarding Plaintiff's physical RFC, it offers no findings on the remaining issues raised by Plaintiff concerning her mental RFC. Accordingly, the Court **ORDERS**:

1. Plaintiff's motion for summary judgment is **GRANTED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Ruthann Loza and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 7, 2018**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE